### BURMAN v. SAKARI.

EQUITY—TRUST—EVIDENCE—SUFFICIENCY.

In a suit to establish a trust in certain shares of stock, and for an accounting, where plaintiff's version was supported only by his own testimony, and defendant's version was supported by two other witnesses, the conclusion of the court below, that plaintiff had failed to establish his case, *held*, supported by the evidence.

Appeal from Houghton; O'Brien (Patrick H.), J. Submitted January 8, 1920. (Docket No. 28.) Decided April 10, 1920.

Bill by Victor M. Burman against Henry Sakari to establish a trust in certain shares of corporate stock, and for an accounting. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*Stone & Schulte,* for plaintiff.
*B. H. T. Burritt,* for defendant.

BROOKE, J.  For several years, commencing in 1906, plaintiff was engaged in selling stock in the Alta & Hecla Mining & Milling Company and in the South Columbus Mining Company on commission.  In such transactions, plaintiff acquired upwards of 20,000 shares of stock in one or the other of these companies. A consolidation was effected between the two companies and one or more smaller companies under the name of the South Hecla Mining Company.

In 1907 the company was in difficulty and plaintiff conceived the idea of selling treasury stock to several of those to whom he had sold some of the earlier issues.  The purchasers were unable to pay for the same, and raised the money necessary for the purchase by making a joint note, which was discounted at a local bank.  After a time, the holder of the note required better security and plaintiff approached the defendant, asking him to indorse a note for $5,000, which the bank had agreed to accept.  This defendant did and received from plaintiff at the time upwards of 20,000 shares of the mining stock as security for his said indorsement.  Other sums were raised at various times thereafter, until the amount of paper upon which defendant was indorser with others, reached the sum of $8,300.

Some time prior to the year 1914 the plaintiff had secured possession of this stock so deposited with the defendant as collateral security, and had sold, from time to time, certain amounts of it to meet his own necessities.  The mine did not prove a success, and in January, 1914, an assessment of 6 cents per share was levied upon all outstanding stock.  At that time defendant had either paid, or become obligated to pay, on account of his indorsements, upwards of $8,000, and held no security therefor.  When the assessment was levied, plaintiff was without funds to pay the amount thereof, and he approached defendant with

209—Mich.—40.

the proposition that he (defendant) and two or three of his associates should pay the assessment. The plaintiff claims that the defendant agreed to advance the assessment, simply making it a further lien upon the stock; while defendant claims that the plaintiff represented that he was absolutely unable to pay the assessment himself and would lose the stock in any event, and urged the defendant to pay the same and so save himself from financial loss as far as possible.

At that time, it is further the plaintiff's claim that he mailed to defendant 27,500 shares of the stock, whereas defendant asserts that no stock was mailed to him but that plaintiff delivered to him 12,994 2/3 shares under the conditions above stated.

At about the same time, plaintiff secured an option from the company on 15,000 shares of assessment stock at the price of 6½ cents per share. He claims to have urged defendant to purchase these 15,000 shares on the same terms as he had asked him to pay the assessment of 6 cents per share on the amount of stock which he delivered. Defendant admits that plaintiff urged him to buy the 15,000 shares at 6½ cents, upon which he held an option, but asserts that there was no understanding that the plaintiff should have any interest in the stock so purchased. As a matter of fact, defendant and his associates did buy 8,000 shares of the 15,000 shares and stock certificates were issued by the company directly to defendant and his associates, according to their several contributions to said purchase. Some time later, and about the year 1917, the stock became more valuable, selling upon one occasion as high as $1.55 per share.

The bill is filed for the purpose of having defendant declared to be a trustee for plaintiff of all the shares claimed to have been deposited by plaintiff with defendant as security, and for an accounting. A full hearing was had in open court. The plaintiff's ver-

sion of the affair is supported only by the testimony of himself. Defendant's version is supported by the testimony of J. H. Bousu and Walfred Bousu. There is a simple question of fact presented upon the record.

The learned circuit judge, who saw and heard the witnesses, in concluding an exhaustive opinion, covering the facts, said:

"I am not convinced by a fair preponderance of the evidence that the plaintiff has established that either the so-called 'option stock' or the 'assessment stock' was to be held by the defendant as security. On the other hand, I am of the opinion that the defendant has purchased and held the stock in all respects exactly as he claims. The plaintiff waited until the stock had risen in value and the defendant and his friends had become liable for and had actually advanced a large sum of money in acquiring the stock. The defendant gave him a fair opportunity to purchase it back at any time before it went above the amount of the liability. Of this opportunity, the plaintiff did not see fit to avail himself. He waited until the mine was an unexpected success and then sought to profit upon the risk assumed by the defendant. If the stock had decreased in value he would not have asked to redeem it. He would have been content to allow the defendant to pay the notes and the interest, which he was unable to pay. Under the circumstances, the bill of complaint is dismissed with costs to the defendant."

After a careful perusal of the evidence offered, we have no hesitation in agreeing with his conclusion.

The decree is affirmed.

MOORE, C. J., and STEERE, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred. STONE, J., did not sit.